RICH et al. v. TEASLEY et al.

(Circuit Court, N. D. Georgia. March 7, 1912.)

JOINT ADVENTURES (§ 1*)—FIDUCIARY RELATIONS—VENDOR AND PURCHASER.

By accepting complainants' offer to buy mining property on which defendant had an option and to pay him 20 per cent. of any profits arising from a resale or operation of the property, defendant became bound to disclose to them the fact that the option price was actually $7,000, and not $18,000, as written in the option agreement.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 1; Dec. Dig. § 1.*].

In Equity. Bill by William Rich and others against William A. Teasley and others. Decree for complainants.

King & Spalding, for complainants.

Dorsey, Brewster, Howell & Heyman and George F. Gober, of Atlanta, Ga., for defendants.

NEWMAN, District Judge. In the spring of 1900, James R. Brown, W. A. Teasley, and William M. Davidson were the owners of a piece of property known as "Canton copper mine," in Cherokee county, Ga. It appears at one time work was done on the property mining ore, but at the period in question it was not being mined. John G. Westerman was a dealer in mining lands. Westerman appears to have been something of an expert in this line. He obtained from Brown, Teasley, and Davidson an option for 90 days on the property in question, authorizing and allowing him to purchase the same for the price of $7,000. When the option was reduced to writing, it showed $18,000 as the option price, although it is agreed by all parties. Westerman was to pay Brown, Teasley, and Davidson only the sum of $7,000. The option was dated April 25, 1900, and was for 90 days.

It appears that Westerman, desiring to sell, wrote to certain parties in Nashville, Tenn., about his control of this property, and his desire to sell it. William Rich, one of the complainants here, was a resident of Nashville, and in some way heard of Westerman and of his having control or the right to sell this property. William Rich had a brother-in-law in Atlanta, Ga., Aaron Haas, and it seems Rich wrote Haas to make inquiries about the property. Haas wrote to Westerman, and there were some telegraphic communications which resulted in Haas agreeing to go up to Canton, meet Westerman, and look over the property on a certain day in July, 1900. Haas was prevented from going, however, and in a few days William Rich and his brother Herman Rich of Birmingham, Ala., appeared in Canton, met Westerman, and went out to look over the property. On their return to Canton from the country, some negotiations occurred between the two Rich brothers and Westerman. Westerman first asked $30,000 for the property, which the Riches thought too much. The negotiations resulted finally in the Rich brothers expressing a willingness to pay $18,000 for the property, and to give Westerman, in addition, 20 per cent. of any amount of profit they might make from the sale of the property, or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

.20 per cent. of the profits they might make by operating or carrying on the mine. An appointment was made for Westerman to come to Atlanta the second day after the Riches visited Canton. Westerman did come, and there was a meeting of Westerman on the one hand, and Haas and the two Rich brothers on the other hand in Haas' office. At that time Westerman produced the option from Teasley, Brown, and Davidson to himself, which was as follows:

"State of Georgia, Cherokee County: Know all men by these presents that we have agreed at the expiration of ninety days from this date to make an escrow deed to lots of land Nos. 127, 128, 161, and 162, in the 14th district, 2d section, of said county. This property known as the Canton copper mine. Said lots containing six hundred and forty acres more or less, upon the following conditions, $2,500.00 to be paid to us at the expiration of the said ninety days, $1,500.00 on the expiration of twelve months from this date, and $8,000.00 at the expiration of eighteen months from this date, said deed to be deposited at the Canton Bank in said county, and to be made to the owner of this property, or to whom he may direct, said deed to be delivered to the purchaser upon the payment of the sums of money made therein and at the times specified. This paper is given to John G. Westerman who has contracted to pay the sums of money herein mentioned. April 25, 1900.

"Signed, W. A. Teasley for Himself, and J. R. Brown and W. M. Davidson by W. A. Teasley."

After considerable discussion, the result was shown by papers executed by the parties respectively as follows: Certain letters and telegrams from Aaron Haas to Westerman, the paper signed by Haas and William and Herman Rich dated July 7, 1900, with an addition signed by Westerman, as follows:

"Mr. J. G. Westerman, Canton, Ga.

"Referring to the offer we made to you under this date for the Canton copper mine, we agree to give you twenty per cent. of all profits arising from or accruing to the same. These profits are to be yours, whether they result from a sale of the property, or through its operation by us or a corporation owned by us. It is clearly understood that you are to receive nothing from the sale or the operation of the property before the cost of the land and the expense of operating the mine have been first taken out of the proceeds resulting from such sale or operation. It is also fully understood and agreed that you are to be at no expense, and are to assume no liability on account of this property or through its operation.

"[Signed] Aaron Haas. William Rich. H. Rich.

"I agree to the within proposition.

"[Signed] J. G. Westerman."

A paper signed by J. G. Westerman dated July 7, 1900, is as follows:

"Whereas, Aaron Haas, William and Herman Rich have made an offer for the purchase of lots 127, 128, 161 and 162, known as the Canton copper mine, in Cherokee county, and whereas I hold an option on said property; in consideration of the twenty per cent. interest which I am to get in said property when purchased, I hereby agree that I will not sell this property to any other purchaser without the written consent of either one of the foregoing named parties. In the event of a sale being made by me with such consent, I am to receive twenty per cent. of the profit arising from such sale.

"[Signed] J. G. Westerman."

A document addressed to J. G. Westerman and dated July 7, 1900, signed by Aaron Haas and associates, submitting a proposition for

the purchase of copper mine property, with indorsement of an acceptance of same on the back, is as follows:

"Mr. J. G. Westerman, Canton, Georgia.

"We will contract for lots 127, 128, 161, and 162 known as the Canton copper mine in Cherokee county, Georgia, upon the following conditions: As soon as we have examined and approved titles, we will pay $2,500.00 in cash. After which we are to have the privilege of opening and working the mine in such a manner as we find necessary and expedient. All minerals found and taken out by us are to be our property. We are to have permission to use all timber necessary for mining purposes. We are to pay all cost and expenses of opening and operating said mine. At the end of twelve months from the time the first payment is made, we are to pay $7,500.00 more, or surrender the property back to the owners.

"At the time this payment is made, we are to execute our note in the sum of eight thousand dollars, payable twelve months from that date. Prior to the cash payment of $2,500.00 a deed in escrow is to be executed and deposited in the Bank of Canton, to be delivered to us or to our assigns, when we have fully performed our contract as herein recited. It is also fully understood and agreed that we may at any time pay the deferred payment amounting to $15,500.00 and when so paid, the deed must and shall be delivered to us or to our assigns.

"As soon as this offer is accepted we will cause an examination of titles, and will pay the $2,500.00 as soon as our attorney approves the same. The examination of title to be completed within thirty days from the date of the acceptance of this offer.

"[Signed]    Aaron Haas, for Himself and Associates."

Indorsement on back, dated July 9, 1900:

"Canton, Georgia. We, J. G. Brown and W. A. Teasley of the county of Cherokee and said state, and W. M. Davidson of the city of Savannah, the owners of the Canton copper mine in said county of Cherokee, consisting of lots of land Nos. 127, 128, 161 and 162, in the 14th district, 2d section, do accept this proposition of Aaron Haas and his associates, which is set out in the writing on the foregoing pages. We agree to do and perform all that is required of us on the conditions therein specified being performed by the said Haas and his associates.

"[Signed]    W. A. Teasley, for Himself and Brown and Davidson."

Certain correspondence between Aaron Haas and Westerman before the final contract was signed by Teasley, Brown, and Davidson is in the record, but is not very material. There was a power of attorney given by the Rich brothers to Aaron Haas appointing him to act for them, dated July 24, 1900. Shortly after the last of the foregoing papers was executed and the $2,500 had been paid by Aaron Haas, representing the Rich brothers, to Teasley in Canton, Ga., the deed was deposited in escrow in the Lowry National Bank as stipulated, and the matter for the time being was closed. Westerman was employed by the Riches to proceed with the work of opening and operating the copper mines, and early in 1901 he was joined there by Herman Rich. It seems a few months after the trade was closed Herman Rich discovered that Westerman was only to pay Brown, Teasley, and Davidson $7,000 for the mining property. This discovery he communicated to his brother, William Rich, and after this they conferred with counsel, the result being that the bill commencing the litigation in this case was filed.

There was an acknowledgment of tender from Herman Rich to Brown, Teasley, and Davidson, and of demand for deed dated June 11, 1901, as follows:

"I hereby acknowledge that Herman Rich has this day tendered to me and W. A. Teasley the sum of fifty-eight hundred dollars with interest thereon from the 24th of July, 1900, and has demanded a deed for lots of land Nos. 161, 162, 127, and 128 in the 14th district and second section, which he claims to be the balance due for the purchase of said land by himself and William Rich under a contract made on said 24th of July, 1900, with the said Teasley for himself and as agent for W. M. Davidson, and myself, and I have declined to accept it on the ground that he did not tender as much as their written contract shows to be due.

"This 11th June, 1901.          [Signed]     James R. Brown.
                                              "W. A. Teasley.
                                              "W. M. Davidson,
                              "By W. A. Teasley, Attorney in Fact."

The bill goes upon the theory that Westerman was a representative of the Riches, and was to purchase the property for them from Brown, Teasley, and Davidson, and that he misrepresented the amount which he was to pay, stating it to be $18,000, when, in fact, it was $7,000. The prayers of the bill are that Westerman be decreed to have been the agent of complainants and to occupy a fiduciary relation toward them, and that complainants be entitled to the benefit of all profits or commissions of every character which the said Westerman may have obtained in the purchase of said property.   Second. That complainants be entitled to pay to the owners of the property only such price as Westerman had agreed with them that they should receive, and that all surplus over and above said sum be decreed not to be due by complainants and that the purchase price named should be credited therewith.   Third. That the exact sum to be received by Teasley, Brown, and Davidson as the price of the property be ascertained, as well as the exact sum which has been heretofore received by them on account of said price and that it be decreed that upon payment by complainants to Teasley, Brown, and Davidson of the balance of said price not heretofore paid to and received by them, the deed now deposited with the Lowry National Bank be delivered to complainants, and that complainants be entitled to have vested in them all the right, title, and interest of the said Teasley, Brown, and Davidson in and to the premises described in said deed, and that they thereupon be decreed to hold said property subject only to such rights and interests as may be decreed to be due to and enjoyed by the said Westerman under and by virtue of the agreements between complainants and Westerman, if any he now have.   Fourth. That it be decreed that Westerman has undertaken to secure for himself an illegal profit in said transaction, to wit, the difference between said sum of $18,000 and the price to be actually received by the said Teasley, Brown, and Davidson, and that by reason of the same it be decreed that Westerman is not entitled to any interest whatever in the property.   Fifth. That Teasley, Brown, and Davidson be restrained and enjoined pending this suit from undertaking to sell or dispose of the premises in question, and that the Lowry National Bank be enjoined and re-

strained from delivering to them or any one, the deed to the premises deposited with it in escrow.

The real question in the case for determination is whether the complainants are entitled to have the property conveyed to them upon the payment of $7,000; that is to say, that they should have the deed now in escrow in the Lowry National Bank delivered to them upon the payment of said sum.

It is urged for complainants in the first place that there was an actual misrepresentation by Westerman as to the amount he was to pay for the property. Both the Riches and Haas testify most positively that Westerman stated in reply to inquiries by the Riches that the amount he was paying Brown, Teasley, and Davidson was the amount named in the option, $18,000. Westerman denies this. It seems that this is an inquiry which it is entirely probable that the Riches would have made; that is, a careful inquiry to ascertain if Westerman was paying the full amount named in the option which he had from Brown, Teasley, and Davidson. But, in the view I have taken of this case, it is unnecessary to decide whether actual inquiry was made by the Riches of Westerman as to whether he was really paying $18,000, and whether he stated, as they claim positively, that he was, because I think the case is controlled upon a different ground.

It is conceded by all the parties, including Westerman, that he did not disclose to them the fact that the amount named in the option was not the true amount he was to pay for the property, but that the amount he was to pay was very much less. He rests his case on the fact that he was dealing with Haas and the Riches at arms length, and was selling the property at the best price he could get, and was, consequently, under no obligation to disclose to them what he was to pay for the property. Westerman and his counsel treat it as a sale of the property by Westerman to the Riches, and not as a purchase by him of the property for the Riches from Brown, Teasley, and Davidson. If the relation of seller and buyer really existed and went on all the time until the conclusion of the contract, there might be room at least for the contention that Westerman was under no duty to disclose the amount he was paying for the property. But the controlling fact in the case to my mind is that Westerman accepted the offer of the Riches to pay $18,000, and to give Westerman 20 per cent. of the profits derived from the sale of the property or from its operation. His relation thereby to the Riches in the transaction became such that it was his duty then at least to disclose to them the true amount to be paid by him for the property. Westerman's interest and his relation to the matter at once became such when this agreement was made that it was his duty to act towards the Riches just as the members of a firm are required to act toward each other, or as an agent toward his principal. He could not participate with them in the profits of the property and act in bad faith toward them as to what he was paying.

Section 4623 of the Code of Georgia 1910 is as follows:

"Misrepresentation of a material fact, made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitutes legal fraud."

Section 4627, Id., is in this language:

"Any relations shall be deemed confidential, arising from nature or created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another; or where, from similar relation of mutual confidence, the law requires the utmost good faith; such as partners, principal and agent," etc.

It seems to me perfectly clear that the moment that Westerman agreed with the Riches to receive 20 per cent. of the profits to be derived from the sale or operation of the property that such relationship arose between him and the Riches that before the payment of the cash part of the purchase price and the execution of the notes it was his duty to have disclosed to the Riches the actual amount that he was to pay for the property, otherwise the contract for the $18,000 would not be enforcible on Westerman's part.

Brown, Teasley, and Davidson are making no effort to enforce the contract for this amount, nor do they claim any interest in anything over $7,000, and this amount has been paid them by money deposited in the registry of the court. It appears that Westerman, being in need of money, was allowed by Brown, Teasley, and Davidson to have $1,300 of the $2,500 in cash paid on July 24, 1900. Since this litigation commenced $7,500 has been deposited in the registry of the court by the Riches. Of this, Brown, Teasley, and Davidson were first paid $4,500 by consent, and subsequently the $1,300 which they had allowed Westerman out of the first $2,500, so that they are now paid in full, and are nominal parties to the suit. Complainants are entitled to a decree in accordance with what has been stated. Counsel will be heard as to whether Westerman is entitled to a conditional decree for 20 per cent. out of any profits realized from the sale or operation of the property.

Application is made by the defendant for leave to file a cross-bill asking for money judgment against the Riches for the amount unpaid, and for an additional decree for the 20 per cent. under the terms of the contract Westerman was to receive from the profits derived from the property. It is objected that it comes too late, and ought not to be now allowed. In order to put the record in shape, so that, if the defendant has rights and the court here should be in error, the same may be properly corrected, I shall allow the filing of the cross-bill.